**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND (NORTHERN DIVISION)**

| | | |
|---|---|---|
| **INSIGHT AT PARSON'S LAKE, LLC**<br>**16255 SUSSEX HIGHWAY**<br>**BRIDGEVILLE, DE 19933,** | * <br> * | |
| **PLAINTIFF,** | * | |
| **V.** | * | **CASE NO.** ________________ |
| **CITY OF SALISBURY, MARYLAND**<br>**C/O JULIA GLANTZ, RESIDENT AGENT**<br>**125 N. DIVISION ST.**<br>**ROOM 304**<br>**SALISBURY, MD 21801** | * <br> * <br> * | |
| ***COUNTY OF RESIDENCE: WICOMICO, MD*** | * | |
| **DEFENDANT.** | * | |

* * * * * * * * * * * * *

## COMPLAINT

Plaintiff, Insight at Parsons Lake, LLC ("Insight Homes"), by and through its attorneys, Friedberg PC, hereby files this Complaint against defendant City of Salisbury (the "City"), and in support thereof states as follows:

### PARTIES

1. Insight Homes is a foreign limited liability corporation organized under the laws of the State of Delaware, with its principal place of business located in Bridgeville, Delaware. Insight Homes is qualified to do business in Maryland.

2. The City is a municipal corporation organized under the laws of the State of Maryland, located in Wicomico County, Maryland.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. Insight Homes is a Delaware limited liability corporation with its principal place of business located in Delaware, and the City is a Maryland municipal corporation. All issues of law and fact are among citizens of different states.

4. The amount in controversy exceeds $75,000.00, exclusive of interest, costs, and attorneys' fees.

5. Venue is proper in the District of Maryland under 28 U.S.C. § 1391 because a substantial part of the events giving rise to Insight Homes' claims occurred in this district.

## INTRODUCTION AND FACTS

6. In or around 2005, Thomas H. Ruark, Inc. ("Ruark") purchased and planned to develop certain real property (the "Property") in Wicomico County, Maryland. The name of the development is the Villages at Parsons Lake (the "Villages").

7. In furtherance of the plan to develop the Villages, Ruark and the City entered into a Public Works Agreement (the "PWA") on or about September 5, 2005. A copy of the PWA is attached as Exhibit A.

8. The terms of the PWA required Ruark to build certain infrastructure (the "Infrastructure") for the City, including the roads, sewage lines, and drainage lines. Upon completion of the Infrastructure, the City agreed to take title to the roads (the "Roads") in the Villages, including responsibility for the maintenance and upkeep of the Roads and the Infrastructure beneath the Roads.

9.      The PWA also required Ruark to procure a performance bond, to ensure that work on the Infrastructure was completed on behalf of the City.  In compliance with the PWA, Ruark purchased a performance bond (the "Bond") from United States Surety Company on or about August 24, 2005, in an initial amount of $1,826,000.00, later reduced to $365,000.00 in 2008. Upon information and belief, the Bond was in effect from the time it was issued until at least the time Insight Homes purchased certain lots on the Property.

10.     The terms of the PWA require that the Infrastructure be built both on the Roads and on all of the lots on Property.  Upon information and belief, the Roads are now owned by the City, and the lots on the Property are owned by Insight Homes and certain individuals and entities (the "Homeowners") who purchased either directly from Ruark or from third parties who purchased directly from Ruark.

11.     The PWA was never recorded in the land records of Wicomico County, MD.

12.     Neither Insight Homes nor any of the Homeowners assumed the PWA, nor was the PWA assigned to Insight Homes or any of the Homeowners.

13.     Upon information and belief, the PWA has never been assigned or to any other person or entity.

14.     Upon information and belief, Ruark completed the necessary work on the Infrastructure in or around 2007.  Pursuant to the terms of the PWA, title to the Roads was transferred to the City in or around 2007.

15.     At the time the City accepted title to the Roads, pursuant to the PWA, the City became responsible for all maintenance to the Roads and the Infrastructure beneath the Roads.

16.     In or around 2008, Ruark abandoned the Villages project, after constructing approximately 56 of the planned 144 townhomes.  Those units were sold to individuals and entities, and are now owned by the Homeowners.

17.     The remaining lots (the "Insight Lots") were sold to Insight Homes at a foreclosure sale on or about May 17, 2017.  A copy of the deed (the "Insight Deed") transferring the Insight Lots to Insight Homes is attached as Exhibit B.

18.     The Insight Deed shows that Insight Homes never took title to the Roads, but only to the Insight Lots.

19.     In the time since Ruark abandoned the Villages, the City asserts that there has been significant damage to the Roads and the Infrastructure beneath the Roads, as well as material work left uncompleted under the PWA.

20.     In April 2018, the City and Insight Homes attempted to determine the cost of the repairs to the Roads and Infrastructure, along with an allocation of the costs for the repairs.  The City contended at that time that Insight Homes would be responsible for $269,500 in repairs, and that the City would be responsible for $128,000 in repairs.  According to the City's estimates, he total cost of the repairs is approximately $397,500.

21.     In April 2018, Insight Homes sought building permits (the "Permits") from the City to build the remaining townhomes on the Insight Lots.  The City issued one of the Permits, but now wrongfully refuses to issue a certificate of occupancy (the "Certificate of Occupancy") for the completed structure until Insight Homes performs all repairs and maintenance to the Roads and the Infrastructure beneath the Roads, despite the City's ownership of the Roads.

22.     The City wrongfully refuses to issue the remaining Permits unless and until Insight Homes performs all repairs and maintenance to the Roads and the Infrastructure beneath the Roads, despite the City's ownership of the Roads.

23.     As a condition of issuing the Permits and the Certificate of Occupancy, the City is demanding that Insight Homes enter into a new Public Works Agreement which would require Insight Homes to perform Ruark's obligations under the unassigned, unrecorded PWA.

24.     The City informed Insight Homes that it contends that it is not the owner of the Roads and that it is not responsible for maintenance to the Roads and the Infrastructure beneath the Roads.

25.     Prior to Insight Homes' purchase of the Insight Lots, the City had approximately ten years from the time when Ruark abandoned the Villages project in order to make a claim on the Bond.  By failing to make such a claim, the City accepted that the work on the Roads and the Infrastructure was completed.

26.     The City informed Insight Homes that it contends that the PWA is a covenant running with the Property and that Insight Homes is required to perform Ruark's work under the PWA.

**FIRST CAUSE OF ACTION**
**(Declaratory Judgment that the City Owns the Roads)**

27.     Insight Homes repeats and realleges paragraphs 1 through 26 herein.

28.     Insight Homes is entitled to a declaratory judgment that the City owns the Roads and is responsible for all maintenance and repairs to the Roads and the Infrastructure beneath the Roads, as well as all work left uncompleted under the PWA.

29.     This case presents a present, ripe, and justiciable controversy as to the rights and other legal relations of the parties.  Because Insight now desires to build on the Insight Lots and

the City fails and refuses to issue the Permits, Insight Homes now has an urgent need to resolve the issue whether the City is responsible for maintenance and repairs to the Roads and the Infrastructure beneath the Roads, as well as all work left uncompleted under the PWA.

30. If it is determined that the City does not own the Roads, then Insight Homes may be responsible for the full cost of repairs to the Roads and Infrastructure, approximately $397,500.

31. Insight Homes has incurred and will continue to incur economic injury and has no adequate remedies other than a prompt declaratory judgment coupled with an injunction against the City taking any action inconsistent with the Court's declaratory judgment.

32. Declaratory relief and injunctive relief is appropriate to resolve the ownership of the Roads.

**SECOND CAUSE OF ACTION**
**(Declaratory Judgment that the PWA Does Not Run with the Property)**

33. Insight Homes repeats and realleges paragraphs 1 through 32 herein.

34. In the alternative, if the Court rules that the City is not the owner of the Roads, then Insight Homes is entitled to a declaratory judgment that the PWA does not run with the Property.

35. This case presents a present, ripe, and justiciable controversy as to the rights and other legal relations of the parties. Because Insight now desires to build on the Insight Lots and the City fails and refuses to issue the Permits, Insight Homes now has an urgent need to resolve the issue of whether it and the Homeowners are bound to the terms of the PWA, despite the fact that the PWA was not recorded and no assumption or assignment of the PWA ever occurred.

36. If it is determined that the PWA does run with the Property, then Insight Homes may be responsible for the full cost of repairs to the Roads and Infrastructure, approximately $397,500.

37. Insight Homes incurred and will continue to incur economic injury and possesses no adequate remedies other than a prompt declaratory judgment coupled with an injunction against the City taking any action inconsistent with the Court's declaratory judgment.

38. Declaratory relief and injunctive relief is appropriate to resolve whether the PWA runs with the Property.

**THIRD CAUSE OF ACTION**
**(Declaratory Judgment that All Owners of the Property Are Bound by the PWA)**

39. Insight Homes repeats and realleges paragraphs 1 through 38 herein.

40. In the alternative, if the Court rules that the City is not the owner of the Roads, and that the PWA runs with the Property, then Insight Homes is entitled to a declaratory judgment that any person or entity who owns any part of the Property is bound by the terms of the PWA and is responsible for payment of their proportional share for repairs to the Roads and the Infrastructure beneath the Roads, as well as all work left uncompleted under the PWA.

41. This case presents a present, ripe, and justiciable controversy as to the rights and other legal relations of the parties. Because Insight now desires to build on the Insight Lots and the City fails and refuses to issue the Permits, Insight Homes urgently needs to resolve the issue whether all owners of the Property are bound to the terms of the PWA and are responsible for payment of their proportional share for repairs to the Roads and the Infrastructure beneath the Roads, as well as all work left uncompleted under the PWA, despite the fact that the PWA was not recorded and no assumption or assignment of the PWA ever occurred.

42. If it is determined that the only Insight Homes is responsible for payment of the repairs to the Roads and Infrastructure, then Insight Homes may be responsible for payment in the amount of approximately $397,500.

43. Insight Homes incurred and will continue to incur economic injury and has no adequate remedies other than a prompt declaratory judgment coupled with an injunction against the City taking any action inconsistent with the Court's declaratory judgment.

44. Declaratory relief and injunctive relief is appropriate to resolve whether the all owners of the Property are bound by the terms of the PWA.

WHEREFORE, Plaintiff Insight at Parsons Lake, LLC, respectfully demands judgment as follows:

a. On Insight Homes' First Cause of Action, that the Court, on an expedited basis, issue a declaration in favor of Insight Homes and against the City pursuant to 28 U.S.C. § 2201 *et seq.* that the City is the owner of the Roads and is responsible for all repair and maintenance costs to the Roads and the Infrastructure beneath the Roads, as well as all work left uncompleted under the PWA;

b. On Insight Homes' First Cause of Action, that the Court issue an injunction against the City taking any action inconsistent with the Court's declaratory judgment above;

c. On Insight Homes' Second Cause of Action, that the Court, on an expedited basis, issue a declaration in favor of Insight Homes and against the City pursuant to 28 U.S.C. § 2201 *et seq.* that the Public Works Agreement between the City and Thomas H. Ruark, Inc., dated September 5, 2005, is a covenant that runs with the Property on which the Villages at Parson's Lake is built, and that Insight Homes and the Homeowners are not bound by its terms;

d. On Insight Homes' Second Cause of Action, that the Court issue an injunction against the City taking any action inconsistent with the Court's declaratory judgment above;

e. On Insight Homes' Third Cause of Action, that the Court, on an expedited basis, issue a declaration in favor of Insight Homes and against the City pursuant to 28 U.S.C. § 2201 *et seq*.. that any person or entity who owns any part of the Property is bound by the terms of the PWA and is responsible for payment of their proportional share for repairs to the Roads and the Infrastructure beneath the Roads, as well as all work left uncompleted under the PWA;

f. On Insight Homes' Third Cause of Action, that the Court issue an injunction against the City taking any action inconsistent with the Court's declaratory judgment above;

g. On all causes of action, an award of Insight Homes' costs of this action, including attorneys' fees to the extent authorized by law; and

h. Such other and further relief as the Court determines to be just and proper.

Respectfully submitted,

/s/ Jeremy S. Friedberg

Jeremy S. Friedberg, Fed. Bar No. 10638
Gordon S. Young, Fed. Bar No. 14866
Friedberg PC
10045 Red Run Boulevard, Suite 160
Baltimore, Maryland 21117
(410) 581-7400
(410) 581-7410 (facsimile)

*Attorneys for Insight at Parsons Lake, LLC*

# Exhibit A



# PUBLIC WORKS AGREEMENT

THIS PUBLIC WORKS AGREEMENT (Agreement') is made and executed this 2nd day of September, 20 05, by and between the City of Salisbury, a Municipal corporation of the State of Maryland, hereinafter called "CITY" and Thomas H. Ruark, Inc., a Maryland Corporation, hereinafter called "DEVELOPER."

## RECITALS

Developer is in the process of developing a tract of land located off of East Naylor Mill Road, in the North side of Salisbury, within the City of Salisbury Corporate Limits, Wicomico County, Maryland, to be known as The Villages At Parsons Lake (hereinafter referred to as the "Project"). Developer has obtained approval from the City of Salisbury – Wicomico County Planning Zoning Commission for the submitted Comprehensive Development Plan (hereinafter referred to as the "Plan"), as required by the Conditions of Annexation. Developer and City have also agreed to perform or cause to be performed other work related to the Project. The work shall be as indicated on the construction improvement plans and utility contract drawings approved by the Director of Public Works and shall include:

A. The construction of Section 1 of a residential community, located within the property limits of the Project and associated improvements to include Roads, Storm Drains, Curbs, Gutters, Street Lights and other related work;

B. The construction of public water mains and associated improvements as shown on the contract drawings as approved by the City of Salisbury;

C. The construction of public sanitary sewer mains and associated improvements as shown on the contract drawings approved by the City of Salisbury;

D. The construction of a private storm water collection system, Storm Water Management, Soil Erosion Abatement Systems, Roads, Curb, Gutter, Sidewalks, and all other related facilities contained on approved plan and specifications entitled "The Villages At Parsons Lake".

E. The construction of all public water, sewer, storm drain, roadways, curb, gutter, sidewalk and street lighting in accordance with the City's specifications contained in "Construction and Material Specifications for Utility and Roadway Construction," latest edition.

NOW, THEREFORE, in consideration of the mutual understandings and agreements contained herein, the parties covenant and agree as follows:

1. **RESPONSIBILITIES SPECIFIC TO PORTIONS OF THE WORK**

A. With respect to public sanitary sewer, and water systems, the parties will have the following specific responsibilities, in addition to the general responsibilities described in Paragraphs II and III.

1. DEVELOPER SHALL:

a. Post a Letter of Credit or surety bond in the full amount of the Engineer's estimate or construction contract upon review and approval of the estimate or contract by the City for completeness and enforceability.

b. Pay to the City a water and sewer system construction inspection fee in an amount equal to 7.5% of the approved water and sewer construction cost estimate. This fee is for review of construction documents, construction inspection and management of public water and sewer utility construction by the City.

c. Construct the public sanitary sewer and water systems.

d. Dedicate to the City all public sanitary sewer gravity lines, water mains and associated improvements necessary to serve properties served or planned to be served by the dedicated domestic sanitary sewer gravity lines or water mains.

e. Comply with all of the general responsibilities of Developer described in Paragraph II.

2. CITY SHALL:

a. Upon completion and acceptance by the City of the public sewer and water systems and receipt of an acceptable two-year maintenance bond for those improvements, accept for perpetual maintenance, the public sewer and water systems.

b. Upon acceptance of the public sewer and water systems and the two-year maintenance bond, surrender the Letter of Credit or Surety Bond.

B. With respect to public roadways and curb and gutter construction, the parties will have the following specific responsibilities, in addition to the general responsibilities described in Paragraph II and III.

1. DEVELOPER SHALL:

a. Post a Letter of Credit or Surety Bond in the full amount of the Engineer's estimate or construction contract upon review and approval of the estimate or contract by the City.

b. Construct the public roadways, curbs, gutters, sidewalks, streetlights and storm drains.

c. Dedicate to the City right-of-ways for all portions of the public roadways, including curb, gutter, streetlights and storm drains, which serve the planned community.

d. Comply with all of the general responsibilities of Developer described in Paragraph II.

2. CITY SHALL:

a. Upon completion and acceptance of public roadways, curb and gutter, streetlights, and storm drains, accept for perpetual maintenance the roadways.

b. Upon completion and acceptance of public roadways, curb and gutter, streetlights, and storm drains, surrender the Letter of Credit or Surety Bond.

II. DEVELOPER'S GENERAL RESPONSIBILITIES. In addition to the specific responsibilities contained herein, the DEVELOPER SHALL have the following additional responsibilities.

A. Construct and initially fund all of the improvements contemplated hereby, including roadways, in accordance with City of Salisbury, "Construction and Material Specifications for Utility and Roadway Construction" and all plans submitted to and approved by the City. Reimbursements to the Developer shall be in accordance with City policy at the time that the construction improvements plans are signed and the Public Works Agreement is executed.

B. Prepare, execute and record, subject to City approval, plat and deed dedications to the City for all City of Salisbury utility easements and/or right of ways.

C. Dedicate to the City all improvements constructed within the City of Salisbury utility easements and street right-of-ways, including domestic water mains which serve meter taps or planned to serve future meter taps, fire protection service water mains which service fire hydrants or are planned to service future fire hydrants, and all sanitary sewer gravity mains needed to serve property served or planned to be served by dedicated domestic water mains.

D. Provide all testing necessary to assure that construction is consistent with approved plans and specifications.

E. Cooperate with the Salisbury Public Works in accordance with the City's request for direction given to Contractors, non-payment to Contractors for unacceptable work and issuance of stop work orders to contractors.

F. Provide to the City a two (2) year written guarantee and maintenance surety (bond, letter of credit, etc.) in the amount of five percent (5%) of the approved construction cost estimate, with the term of such guarantee to commence upon acceptance by the City of Salisbury of the utility or roadway to be dedicated.

G. Secure all necessary permits from agencies, other than Salisbury Public Works, including but not limited to Maryland Department of the Environment, Maryland Department of Natural Resources, and the Wicomico Soil Conservation District.

H. Permit Salisbury Public Works to inspect any construction to be dedicated to the City to issue instructions regarding construction materials, construction equipment and method of construction directly to the Contractor, or to the Developer, in order to cause such work to be performed in compliance with City "Construction and Material Specifications for Utility and Roadway Construction" and the approved plans.

I. Developer agrees to use the pre-construction estimated quantities which were submitted and approved by the City for the project when obtaining a Contractor to build said project. This pertains to construction items, which require a pre-construction item breakdown cost by the City.

J. Following completion of construction, and within 60 days after the effective date of partial acceptance by the City, the developer shall be responsible for submission of an as-built drawing of all public water, sewer and storm drains as well as private stormwater management construction and to ensure compliance with approved plans. The as-builts shall also show the location of all non-City utilities such as but not limited to electric, telephone, gas and C.A.T.V. The plan must be sealed by a professional land surveyor, property line surveyor or engineer, registered in Maryland. Project surety and water meter installation will be withheld until this information is submitted to and approved by the City.

K. In an effort to eliminate flooding and standing water as a result of the proposed project, the City will require a designed site plan with sufficient "spot elevations" to confirm that drainage will be directed away from all existing and proposed structures and toward an acceptable outfall. This plan must be submitted to and approved by the Department of Public Works prior to issuance of a building permit. The plan must also show proposed ground elevations at each entrance to existing or proposed structures that are at-grade or below-grade, including crawl spaces and garage slabs.

The recorded subdivision plat and covenants shall state: "Owner/Developer, and subsequent Owners, their successors and assigns, shall not modify the individual lot grading plans and/or the Improvements Construction Plan, as approved by the City Department of Public Works, with construction, grading, or landscaping."

III. <u>CITY'S GENERAL RESPONSIBILITIES</u>. In addition to the specific responsibilities described in Section I, the CITY SHALL:

A. For a fee, provide Developer's design engineers with all specifications and City standards for materials, equipment and construction methods.

B. Review and accept or present exception to any changes required to plans for work covered by this Agreement within a reasonable time period.

C. Provide municipal water and sewer service to the Project after acceptance of construction and receipt of maintenance bonds and fees.

IV. UTILITY FEES The City will charge Comprehensive Connection Charges for the utilities to be constructed pursuant to this Agreement, or to be otherwise constructed on the Project in accordance with the policy in effect at the time that the construction improvements plans are signed and the Public Works Agreement is executed.

V. MISCELLANEOUS PROVISIONS

A. Developer shall use a contractor previously approved by the City for construction of the particular type of improvement. Payment to the Contractor shall be the Developer's responsibility. The City may suspend or cancel construction when the contractor does not progress, in a continuous manner, and/or the construction method or materials supplied are less than the standard set forth in the "Construction and Material Specifications for Utility and Roadway Construction" or when the contractor is not in compliance with this agreement and related responsibilities contained therein. The type and quantity of material testing will be determined by the City Field Inspector during construction, as described in the Construction/Material Specifications. Testing costs shall be the responsibility of the Developer.

B. Developer shall require the contractor to obtain the latest version of the City of Salisbury "Construction and Material Specifications for Utility and Roadway Construction" and the "Construction Standards" manual. The contractor shall have a copy of the latest version of both manuals, in addition to construction plans, and other pertinent construction requirements in his possession on the job site at all times.

C. Material quantities are estimated before construction. The Developer shall be responsible for all cost associated with construction above and beyond the estimated pre-construction cost which the City deems necessary to meet current City construction requirements.

D. Developer acknowledges that work completed by any contractor subsequent to "stop work" order may not be accepted for final dedication by the City unless it determines, in its discretion, to do so. In the event work completed by a contractor subsequent to the issuance of a "stop work" order is included in a completed system, such system will not be connected to the City system unless the City, in its sole discretion decides to connect such system.

E. Developer agrees that, notwithstanding written acceptance of improvements by the City, Developer shall be responsible for repairs, maintenance and/or deficiencies which are required, discovered, or determined to be required, for two (2) years after the date of written acceptance by the City.

F. Developer agrees that City will not accept or activate any utility which has not been constructed in accordance with City standards of materials and construction.

G. Developer agrees that in case of conflict or discrepancy(s) in the plan, specifications, standards, etc., the City reserves the right to issue new instructions to the Contractor, as deemed necessary to meet City requirements and/or resolve all disputes. The Developer shall be responsible for any change in cost associated with same.

H. This Agreement is, and shall be, binding upon the Developer, its successor and assigns, and is intended to burden and run with the land upon which the Project is located.

I. No certificates of occupancy can be issued, and, water and sewer facilities cannot be placed into operation for this development until these water and sewer facilities are in compliance with the Wicomico County Water and Sewer Plan.

DEVELOPER:

ATTEST:

THOMAS H. RUARK, INC.,
A Maryland Corporation

BY:
Name:

ATTEST

CITY:
CITY OF SALISBURY, a Municipal Corporation of the state of Maryland

BY:
Name: John R. Jacobs 02 SEP 05

STATE OF MARYLAND
COUNTY OF WICOMICO

I hereby certify that on this 30th day of August, 2005, before me the undersigned appeared, Thomas H. Ruark, president of Thomas H. Ruark, Inc., a Corporation of the State of Maryland, and on his behalf did acknowledge the foregoing instrument to be the act and deed of said corporation.

As witness, I set my hand and official seal.

(SEAL)

Notary Public

My commission expires: 8-1-2007

STATE OF MARYLAND
COUNTY OF WICOMICO

I hereby certify that on this 2nd day of September 2005, before me before me the undersigned officer personally appeared, John F. Jacobs of the City of Salisbury, a Municipal corporation of the State of Maryland, and on his behalf did acknowledge the foregoing instrument to be the act and deed of said corporation.

DORINE C. GEESLIN
MY COMMISSION EXPIRES
AUG 17 2008
WICOMICO COUNTY, MD
NOTARY PUBLIC

As witness, I set my hand and official seal.

(SEAL)

Dorine C. Geeslin
Notary Public

My commission expires: 8/17/08

# Exhibit B

2

Return to:
Mid-Atlantic Title & Escrow Company, Inc.
1319 Mt. Hermon Road, Suite 2-B
Salisbury, MD 21804
INSIGHT 17-0113

THIS DEED, made this 17th day of May, 2017, by **SBC IV REO LLC, a wholly owned subsidiary of SUMMITBRIDGE CREDIT INVESTMENTS IV, LLC, a Delaware Limited Liability Company in Good Standing,** hereinafter referred to as "Grantor", WITNESSETH:

THAT FOR GOOD, VALUABLE AND SUFFICIENT CONSIDERATION for the sum of **FIVE HUNDRED THOUSAND AND 00/100 ($500,000.00)** DOLLARS, receipt of which is hereby acknowledged, the said Grantor does hereby grant and convey unto **INSIGHT AT PARSON'S LAKE, LLC, a Delaware Entity**, as "Grantee", its successors and assigns, forever, in fee simple, all the following described property:

ALL THOSE FEE-SIMPLE LOTS OF GROUND AND THE IMPROVEMENTS THEREON, if any, situated in Wicomico County, Maryland and more fully described in the aforesaid as follows: All those lots, tracts or parcels of land situate, lying and being in the City of Salisbury, in Parsons Election District of Wicomico County and State of Maryland, and being located on but not binding upon the Easterly side of East Naylor Mill Road, the north side of Parsons Lake Drive and being more particularly shown and designated as Lots 25 through 112 inclusive, Block A and Parcels 3, 5, 7, 8, 10 and 12 inclusive, on Plat entitled "The Villages at Parson's Lake Subdivision and Resubdivision of Lot 7A & Parcel 239", made by Parker & Associates, Inc., revised date of November 10, 2005, and recorded among the Land Records of Wicomico County, Maryland in Plat Cabinet No. 14, folio 962, et seq.

BEING in all respects the same parcels of land conveyed unto SBC IV REO LLC, a wholly owned subsidiary of SUMMITBRIDGE CREDIT INVESTMENTS IV, LLC from Kimberly E. C. Lawson, Substitute Trustee, by Trustee's Deed dated March 2, 2015 and recorded among the aforesaid Land Records at Liber 3818, folio 254.

See Exhibit "A" for account numbers.

TOGETHER with the improvements thereof and all the rights, ways, roads, waters, privileges, and appurtenances and advantages thereto belonging or in anywise appertaining.

REFERENCE to said deeds, plats and instruments, and to preceding deeds to the property and the references contained therein, is hereby made for a better description of the property hereby conveyed.

TO HAVE AND TO HOLD the above granted property unto the said **INSIGHT AT PARSON'S LAKE, LLC** its successors and assigns, forever in fee simple, SUBJECT, HOWEVER, to covenants, restrictions, easements and rights-of-way of record.

WICOMICO COUNTY CIRCUIT COURT (Land Records) MSB 4180, p. 0254, MSA_CE100_4254. Date available 06/15/2017. Printed 08/01/2017.

WICOMICO COUNTY CIRCUIT COURT (Land Records) MSB 4180, p. 0255, MSA_CE100_4254. Date available 06/15/2017. Printed 08/01/2017.

AND the said Grantor does hereby covenant that it will warrant specially the property hereby conveyed and that it will execute such other and further assurances of the land as may be requisite and necessary.

AS WITNESS my hand and seal the day and year first above written.

WITNESS:

SBC IV REO LLC, a Delaware limited liability company

BY: MEMBER: SUMMITBRIDGE CREDIT INVESTMENTS IV LLC

BY: _______________ (SEAL)

Name: Scott Silvers

Title: Authorized Signatory

STATE OF New York, COUNTY OF New York, TO WIT:

I HEREBY CERTIFY that on this 17th day of May, 2017 before me, the undersigned officer, personally appeared Scott Silvers, who acknowledged himself/~~herself~~ to be the Authorized Signatory of **SBC IV REO LLC, a wholly owned subsidiary of SUMMITBRIDGE CREDIT INVESTMENTS IV LLC**, and that he/she as such member, being authorized so to do, executed the foregoing deed for the purposes therein contained by signing the name of the Company by himself/herself as such member and certified that this conveyance is not part of a transaction in which there is a sale, lease, exchange or other transfer of all or substantially all of the property and assets of the Company in instrument and he acknowledged that he/she executed the same for the purposes therein contained.

AS WITNESS my hand and seal, the day and year first above written.

My Commission Expires: 8/31/17.

Notary Public

MARISOL SANCHEZ
Notary Public - State of New York
NO. 01SA6210787
Qualified in Putnam County
My Commission Expires 8/31/17.

NOTARY PUBLIC STATE OF NEW YORK

WICOMICO COUNTY CIRCUIT COURT (Land Records) MSB 4180, p. 0256, MSA_CE100_4254. Date available 06/15/2017. Printed 08/01/2017.

CERTIFICATION

I HEREBY CERTIFY that the within and foregoing instrument has been prepared by or under the supervision of the undersigned attorney authorized to practice in the Court of Appeals of Maryland.

William T. Smith, III

I HEREBY CERTIFY THAT TAXES ARE PAID ON THE PROPERTY COVERED BY THIS DEED AS WELL AS ANY OTHER TAXES WHICH SHOULD BE COLLECTED BEFORE TRANSFER OF SAME PURSUANT TO SECTION 14 ARTICLE 21 OF THE ANNOTATED CODE OF MARYLAND.
DAWN MITCHELL PARKS
acting DIRECTOR OF FINANCE
WICOMICO COUNTY, MARYLAND
6/6/17 CC DATE

Recordation Tax Paid
Department of Finance
Date 6/6/17
Initials CC

I hereby certify that Personal Property, Real Estate Taxes prior to Fiscal Year 2002, and all municipal obligations are paid on the property covered by this deed in accordance with the Annotated Code of Maryland. 6-8-17
Finance Director, Salisbury MD

Water Dept. Act. mult tancl only
Date 6-6-17 Per
Finance Director, Salisbury MD

APPROVAL OF
CITY ENGINEER
CITY OF SALISBURY
NON-APPLICABLE

WICOMICO COUNTY CIRCUIT COURT (Land Records) MSB 4180, p. 0257, MSA_CE100_4254. Date available 06/15/2017. Printed 08/01/2017.

**2017**
MARYLAND FORM
**MW506E**

**Certificate of Full or Partial Exemption**

**For Calendar Year 2017**

**DO NOT WRITE OR STAPLE IN THIS SPACE**

NR170762

**NOTE:** Copy B of this form must accompany the deed or other instrument of transfer when the documents are presented to the Clerk of the Circuit Court for recordation.

Failure to provide this certificate may result in the deed or other instrument of transfer being rejected by the Clerk of the Circuit Court when presented for recordation. If Certificate grants a partial exemption, payment in the amount on line 3 and a Form MW506NRS must also be presented to the Clerk of the Circuit Court.

**The Comptroller's decision to issue or deny a Certificate of Full or Partial Exemption and the determination of the amount of tax to be withheld if a partial exemption is granted are final and not subject to appeal.**

## Transferor/Seller's Information

| Name (If joint, give first names and initials of both) | Last Name |
|---|---|
| | |

Name (Corporation, Partnership, Trust, Estate, etc.): SBC IV REO LLC

T/A or C/O or Fiduciary:

Federal Employer I.D. Number: 46-0537758

Current Address (Number and street): 1700 Lincoln Street, Suite 2150

City, State and Zip Code (province, postal code and country): Denver, CO 80203

Transferor/Seller's Entity Type: ☐ Individual/ Estate/ Trust ☑ Business

Ownership Percentage: 100 %

## Property Information

Description of Property (Include address, or district, subdistrict and lot numbers if no address is available):
Parsons Lake Drive, Salisbury, MD 21804
Lots 25-112, BL A and Parcels 3, 5, 7, 8, 10, 12
The Villages of Parsons Lake

Date of Closing: 5/10/2017

Property Account ID Number:

## Comptroller's Certification

Pursuant to §10-912 of the Tax-General Article, Annotated Code of Maryland, I hereby certify that, with respect to the sale or transfer of the property described above, as such sale or transfer is described in the Form MW506AE filed by the Transferor/Seller, the sale or transfer of the property is:

☑ Fully exempt from the withholding requirements of §10-912 of the Tax-General Article, Annotated Code of Maryland.

☐ NOT exempt from the withholding requirements and tax is required to be withheld on the total payment amount, or

☐ Partially exempt from the withholding requirements.

The following amount of tax is required to be withheld:

1. Enter the amount subject to tax . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1 ________
2. Enter tax rate, whichever applies
   a. If transferor/seller is a business entity, enter 8.25%
   b. If transferor/seller is an individual, enter 7.5% } . . . . . . . . . . . . . . . . . 2 ________
3. Amount of tax to be withheld at closing. (Line 1 multiplied by line 2) . . . . . . . . . . . . . . . 3 ________

| [signature] | Revenue Administrator | April 28, 2017 |
|---|---|---|
| Signature | Title | Date |

**Copy B - File with the Clerk of the Circuit Court when the deed or other instrument of transfer is presented for recordation**

*** VOID AFTER 60 DAYS FROM DATE OF ISSUE**

COM/RAD-310

EXHIBIT "A"

SBC IV REO LLC TO INSIGHT AT PARSON'S LAKE, LLC

| | | |
|---|---|---|
| 05-122058 | 05-122066 | 05122074 |
| 05-122082 | 05-122090 | 05-122104 |
| 05-122112 | 05-122120 | 05-122139 |
| 05-122147 | 05-122155 | 05-122163 |
| 05-122171 | 05-122198 | 05-122201 |
| 05-122228 | 05-122236 | 05-122244 |
| 05-122252 | 05-122260 | 05-122279 |
| 05-122287 | 05-122295 | 05-122309 |
| 05-122317 | 05-122325 | 05-122333 |
| 05-122341 | 05-122368 | 05-122376 |
| 05-122384 | 05-122392 | 05-122406 |
| 05-122414 | 05-122422 | 05-122430 |
| 05-122449 | 05-122457 | 05-122465 |
| 05-122473 | 05-122481 | 05-122503 |
| 05-122511 | 05-122538 | 05-122546 |
| 05-122554 | 05-122562 | 05-122570 |
| 05-122589 | 05-122597 | 05-122600 |
| 05-122619 | 05-122627 | 05-122635 |
| 05-122643 | 05-122651 | 05-122678 |
| 05-122686 | 05-122694 | 05-122708 |
| 05-122716 | 05-122724 | 05-122732 |
| 05-122740 | 05-122759 | 05-122767 |
| 05-122775 | 05-122783 | 05-122791 |
| 05-122805 | 05-122813 | 05-122821 |
| 05-122848 | 05-122856 | 05-122864 |
| 05-122872 | 05-122880 | 05-122899 |

WICOMICO COUNTY CIRCUIT COURT (Land Records) MSB 4180, p. 0258, MSA_CE100_4254. Date available 06/15/2017. Printed 08/01/2017.

BOOK: 4180   PAGE: 259

| | | |
|---|---|---|
| 05-122902 | 05-122910 | 05-122929 |
| 05-122937 | 05-122945 | 05-122953 |
| 05-122961 | 05-122988 | 05-122996 |
| 05-123003 | 05-121639 | 05-121655 |
| 05-121671 | 05-121698 | 05-121728 |
| 05-121744 | | |

WICOMICO COUNTY CIRCUIT COURT (Land Records) MSB 4180, p. 0259, MSA_CE100_4254. Date available 06/15/2017. Printed 08/01/2017.

WICOMICO COUNTY CIRCUIT COURT (Land Records) MSB 4180, p. 0260, MSA_CE100_4254. Date available 06/15/2017. Printed 08/01/2017.

## DOCUMENT VALIDATION

Mark S. Bowen, Clerk
Circuit Court for Wicomico County
101 North Division Street
PO Box 198
Salisbury, MD 21803-0198
(410) 543-6551

LR - Deed (w Taxes)
Recording Fee no CT 20.00
Name: sbc iv reo llc/insight at parsons lake
Ref:
LR - Surcharge - linked 40.00
LR - Recordation Tax - linked 0.00
LR - State Transfer Tax - linked 2,500.00
LR - NR Tax - lkd 0.00

SubTotal: 2,560.00

Total: 2,680.00
06/09/2017 02:35
CC22-EM
#8535190 CC0103 - Wicomico County/CC01.03.02 - Register 02

Received for Record JUN 09 2017
and Recorded in the Land Records of
Wicomico County, Maryland

Mark S. Bowen Clerk

# State of Maryland Land Instrument Intake Sheet

City_SALISBURY__________ County: Wicomico

*Information provided is for the use of the Clerk=s Office, State Department of Assessments and Taxation, and County Finance Office only*

**(Type or Print in Black Ink Only--All Copies Must Be Legible)**

**Type(s) Of Instruments** — (G Check Box if Addendum Intake Form is Attached.)
X Deed; __ Mortgage; __Other________; Other________; X Deed of Trust; Lease

**Conveyance Type Check Box** — X Improved Sale Arms-Length [1]; Unimprvd ArmLnth [2]; Multiple Accounts Arms-Length [3]; Not an Arms-Length Sale [9]

**Tax Exemptions (if Applicable) Cite or Explain Authority**
Recordation:
State Transfer:
County Transfer:

**Consideration And Tax Calculations**

| Consideration Amount | | Finance Office Use Only — Transfer and Recordation Tax Consideration | |
|---|---|---|---|
| Purchase Price/Consideration | $ 500,000.00 | | |
| Any New Mortgage | $ 375,000.00 | Transfer Tax Consideration | $ |
| Balance of Existing Mortgage | $ | X( )%= | $ |
| Other: | $ | Less Exemption Amount - | $ |
| Other: | $ | Total Transfer Tax = | $ |
| Full Cash Value | $ | Recordation Tax Consideration | $ |
| | | X( ) per $500 = | $ |
| | | TOTAL DUE | $ |

**Fees**

| Amount of Fees | Doc. 1 | Doc. 2 | |
|---|---|---|---|
| Recording Charge | $60.00 | $ 60.00 | Agent: |
| Surcharge | $ | $ | Tax Bill: |
| State Recordation Tax | $3,500.00 | $ | C.B. Credit: |
| State Transfer Tax | $2,500.00 | $ | Ag. Tax/Other: |
| County Transfer Tax | $ | $ | |
| Other | $ | $ | |
| Other | $ | $ | |

**Description of Property** SDAT requires submission of all applicable information. A maximum of 40 characters will be indexed in accordance with the priority cited in Real Property Article Section 3-104(b)(3)(i).

| District | Property Tax ID No. (1) | Grantor Liber/Folio | Map | Parcel No. | Var LOG (5) |
|---|---|---|---|---|---|
| 05 | SEE EXHIBIT "A" | Book 3818, Page 254 | 119 | 251 | |

| Subdivision Name | Lot (3a) | Block 3(b) | Sect/AR(3c) | Plat Ref. | SqFt/Acreage (4) |
|---|---|---|---|---|---|
| The Villages at Parson's Lake | 25 THRU 112 | A | | / | |

Location/Address of Property Being Conveyed (2): 94 VACANT LOTS AT PARSONS LAKE DRIVE, SALISBURY, MD 21804

Other Property Identifiers (if applicable): | Water Meter Account No.:

Residential XX Non Residential | Fee Simple __xx__ Rent Amount:

Partial Conveyance? Yes x NO | Description/Amt. Of SqFt./Acreage Transferred:

If Partial Conveyance, List Improvements Conveyed:

**Transferred From**
Doc. 1 - Owner(s): SBC IV REO LLC BY MEMBER SUMMITBRIDGE CREDIT INVESTMENT IV, LLC
Doc. 2 - Owner(s) of Record, If Different from Grantor(s): INSIGHT AT PARSON'S LAKE, LLC, and 36 BUILDERS, INC.

**Transferred To**
Doc. 1- Grantee(s) Name(s): INSIGHT AT PARSON'S LAKE, LLC
Doc. 2 - Grantee(s) Name(s): Provident State Bank, Inc.

New Owner=s (Grantee) Mailing Address: 16255 SUSSEX HIGHWAY, BRIDGEVILLE, DE 19933

**Other Names to Be Indexed**
Doc. 1 - Owner(s) of Record, if Diff. from Grantor(s):
Doc. 2 - Owner(s) of Rec., if Diff. from Grantor(s):

**Contact/Mail Information**
Instrument Submitted By or Contact Person
Name: WILLIAM T. SMITH III.
Firm: MID-ATLANTIC TITLE& ESCROW COMPANY, INC.
Address: 1319 MT. HERMON ROAD, STE 2B, SALISBURY, MD 21804
PHONE: 410-341-9650

__XX__ Return to Contact Person
______ Hold for Pickup
______ Return Address Provided

**11 IMPORTANT: *BOTH* THE ORIGINAL DEED AND A PHOTOCOPY MUST ACCOMPANY EACH TRANSFER**

**Assessment Information**
______ Yes __XX__ No Will the property being conveyed be the grantees principal residence?
______ Yes X No Does the transfer include personal property? If yes, identify:________
______ Yes X No Was property surveyed? If yes, attach copy of survey (if recorded, no copy required).

**Assessment Use Only - Do Not Write Below This Line**

Terminal Verification | Agricultural Verification | Whole | Part | Tran. Process Verification

Transfer Number: | Date Received: | Deed Reference: | Assign Property No.:

| Year | 19 | 19 | Geo | Map | Sub | Block |
|---|---|---|---|---|---|---|
| Land | | | Zoning | Grid | Plat | Lot |
| Buildings | | | Use | Parcel | Section | Occ. Cd |
| Total | | | Town Cd. | Ex. St. | Ex. Cd. | |

REMARKS:

Distribution: White - Clerk=s Office Canary - SDAT Pink - Office of Finance Goldenrod - Preparer AOC-CC-300 (6/95)

WICOMICO COUNTY CIRCUIT COURT (Land Records) MSB 4180, p. 0261, MSA_CE100_4254. Date available 06/15/2017. Printed 08/01/2017.

EXHIBIT "A" TO INTAKE SHEET

SBC IV REO LLC TO INSIGHT AT PARSON'S LAKE, LLC

| | | |
|---|---|---|
| 05-122058 | 05-122066 | 05122074 |
| 05-122082 | 05-122090 | 05-122104 |
| 05-122112 | 05-122120 | 05-122139 |
| 05-122147 | 05-122155 | 05-122163 |
| 05-122171 | 05-122198 | 05-122201 |
| 05-122228 | 05-122236 | 05-122244 |
| 05-122252 | 05-122260 | 05-122279 |
| 05-122287 | 05-122295 | 05-122309 |
| 05-122317 | 05-122325 | 05-122333 |
| 05-122341 | 05-122368 | 05-122376 |
| 05-122384 | 05-122392 | 05-122406 |
| 05-122414 | 05-122422 | 05-122430 |
| 05-122449 | 05-122457 | 05-122465 |
| 05-122473 | 05-122481 | 05-122503 |
| 05-122511 | 05-122538 | 05-122546 |
| 05-122554 | 05-122562 | 05-122570 |
| 05-122589 | 05-122597 | 05-122600 |
| 05-122619 | 05-122627 | 05-122635 |
| 05-122643 | 05-122651 | 05-122678 |
| 05-122686 | 05-122694 | 05-122708 |
| 05-122716 | 05-122724 | 05-122732 |
| 05-122740 | 05-122759 | 05-122767 |
| 05-122775 | 05-122783 | 05-122791 |
| 05-122805 | 05-122813 | 05-122821 |
| 05-122848 | 05-122856 | 05-122864 |
| 05-122872 | 05-122880 | 05-122899 |

WICOMICO COUNTY CIRCUIT COURT (Land Records) MSB 4180, p. 0262, MSA_CE100_4254. Date available 06/15/2017. Printed 08/01/2017.

BOOK: 4180 PAGE: 263

| | | |
|---|---|---|
| 05-122902 | 05-122910 | 05-122929 |
| 05-122937 | 05-122945 | 05-122953 |
| 05-122961 | 05-122988 | 05-122996 |
| 05-123003 | 05-121639 | 05-121655 |
| 05-121671 | 05-121698 | 05-121728 |
| 05-121744 | | |

WICOMICO COUNTY CIRCUIT COURT (Land Records) MSB 4180, p. 0263, MSA_CE100_4254. Date available 06/15/2017. Printed 08/01/2017.